James J. Linn

*vs.*

Horace P. Rugg.

Under section *twenty-seven* of *chapter sixty-six* of the *General Statutes*, a promissory note endorsed and transferred for value after dishonor to a third party, who gives notice to the maker of the transfer, and subsequently endorses and transfers the note to another, in an action by the latter is not subject to a claim against the payee by the maker, acquired by the latter after such notice of transfer.

The rule, that, when the testimony upon an issue is of such a character that different persons might from it reasonably draw different conclusions, the verdict of a jury will not be disturbed, applied to this case.

A counter-claim, which requires a reply, must contain the substance necessary to sustain a separate action in favor of the defendant against the plaintiff.

This action was brought in the district court for Hennepin county, by the second indorsee of a negotiable note against the maker. The defendant in his answer alleged that the note was not transferred by the payee until after its maturity, and that, prior to such transfer, the defendant had become the assignee of a debt due from the payee to the defendant's father, greater in amount than the sum due upon the note. The plaintiff replied " to the counter-claim alleged in the answer," denying " each and every allegation in said answer respecting the said counter-claim."

After a trial by jury and verdict for the plaintiff, the

defendant moved for a new trial, which was denied, and he appeals to this court from the order denying such motion.

The evidence given and the facts established at the trial are stated in the opinion.

BRISBIN & PALMER, for Appellant.

BEEBE & SHAW, for Respondent.

*By the Court.*—McMILLAN, J.—The note sued upon was dated May 28th, 1866, and was payable *on demand* to the order of one E. S. Riddell; it was endorsed by Riddell to M. S. James, and by James to Linn, the plaintiff.

James testifies that the endorsement by Riddell to himself was made in August, 1870, and the endorsement by him to the plaintiff about May, 1871.

The statutes of our state provide that "in case of an assignment of a thing in action, the action of the assignee is without prejudice to any set-off, or other defense existing at the time of, or before notice of the assignment; but this section does not apply to a negotiable promissory note, or bill of exchange, transferred in good faith and upon good consideration, before due." *Gen. Stat., ch.* 66, § 27, *p.* 453.

The defendant claims that the effect of this statute is to permit a defendant to set up any set-off or other defense, existing before notice to the defendant of the assignment to the *plaintiff*, although he is a second assignee, and his assignor may have given the defendant notice of the assignment to him previously to such assignment to the plaintiff. We do not think this position a correct one. We think the object of this statute was to enlarge the rule of set-off, and to enable the defendant to set up any claim against the original party, which arose out of the subject matter of the action, or was

Linn v. Rugg.

acquired by the defendant while the chose in action was in the possession of the original party, or before the defendant had notice that he had assigned it for a valuable consideration. So long as the defendant has no notice that the original party has parted with the chose in action, he might in good faith acquire any claim within the statute against such party; and it would seem but just and equitable that he be permitted to set the same up as a defense in an action by the latter. But having received notice that the chose in action is no longer the property of the original party, but belongs to another who has paid value for it, it would seem to be unjust to such purchaser to permit the defendant afterwards to acquire a claim against the original party, and charge the purchaser, or the assignee of such purchaser, with such subsequently acquired claim.

The note in suit being payable on demand, and the first endorsement not having been made until more than four years after its date, the note at the time of the endorsement to James, was dishonored; (*see Gen. Stat., ch.* 23, § 4;) and, under the statute referred to, James took it subject to all the defenses, which the defendant might set up against Riddell, the payee; that is, all set-offs, or other defenses existing at the time of the assignment to him, or before notice to the defendant of such assignment.

The tranferee of a dishonored note acquires all the rights of his transferer. 1 *Parsons on Bills and Notes*, 262; 1 *Ross' Leading Cases*, 332.

Linn, the endorsee of James, therefore acquired all the rights of James, his endorser on the note. If, then, James gave notice to the defendant that the note had been endorsed by Riddell to him, the only claims to which the defendant could plead by way of set-off to the note in this action, would be

such as existed in the defendant prior to such notice by James.

The case settled purports to contain all the testimony given upon the trial. The only evidence which can bear on the question of notice of the assignment, is from James and Rugg.

James testified as follows : " I saw the defendant after I got the note ; had a conversation with him a short time after I received the note. It was within a week or ten days after. He said his father had a claim against Mr. Riddell. He did not claim to have any claim himself." On his cross-examination he said : " I got the note for an old debt of sixty dollars, which Riddell owed me, and offered to let defendant have it for that sum. I owned the note *bona fide* as my property." Rugg, the defendant, testified as follows : " I never told Mr. James that my father had the claim. I told him that the claim was mine when he first spoke to me about the note." The testimony of the plaintiff tended to show that James received the transfer of the note in August, 1870, and in the evidence above cited, James says the conversation mentioned by him was about ten days after he received the note, which would make the conversation not later than the 10th of Sept., 1870. James on his examination in chief mentions but one conversation with the defendant. There is nothing in the cross-examination of James, by which it appears expressly, or from which it is necessarily implied, that he had any other conversation or interview with the defendant. The jury would, therefore, be authorized to draw the conclusion that there was but one conversation or interview mentioned by James, and that the offer by James to let the defendant have the note for sixty dollars, was made in this conversation, and that he made this offer as the owner of the note. This offer by James as owner of the note to sell it to the defendant, it appearing that

James was in fact at the time the owner of it, was notice to the defendant that the note had at that time been assigned to James. The testimony of the plaintiff, then, tends to show that the note had been assigned to James in August, 1870, and that he gave notice of such assignment to him as early as the tenth of September, 1870.

Whether the claim pleaded by way of set-off was assigned to the defendant prior to this notice is a question upon which testimony *pro* and *con* was introduced by the parties, and the evidence was of such a character that different persons might from it reasonably arrive at different conclusions. Under such circumstances, the jury having found for the plaintiff, and no erroneous instructions having been given to them by the court, we must presume they determined the question in the plaintiff's favor, and cannot disturb their finding.

The appellant assumes that the answer pleads new matter, which constitutes a counter-claim requiring a reply, and argues that the reply does not put in issue the new matter stated in the answer, and that he is entitled to judgment. The statute requires a reply to new matter in an answer, which constitutes a counter-claim; but to new matter which operates merely as a defense, but does not constitute a counter-claim within the meaning of the statute, no reply is necessary to put it in issue. A counter-claim within the statute must be " an existing one in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action : *First.* A cause of action arising out of the contract or transaction, set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action ; *Second.* In an action arising upon contract, any other

Linn v. Rugg.

cause of action, arising also on contract. and existing at the commencement of the action."

The first essential requisite in a counter claim is that it "must contain the substance necessary to sustain an action on behalf of the defendant against the plaintiff, if the plaintiff had not sued the defendant," and must be such a claim as would authorize a several judgment in the action between the parties. Here the defendant could not in any event have recovered a judgment in the action for any portion of the claim; he could establish it as a defense against the entire claim of the plaintiff, but could not make it the basis of a judgment for any amount against the plaintiff. It is not, therefore, a counter-claim within the statute, and no reply was necessary. *Gen. Stat.*, ch. 66, §§ 27, 80, 83 ; *Vassar vs. Livingston*, 13 *N. Y.* 248 ; *Thompson vs. Sickles*, 46 *Barb.* 49 ; *Swift vs. Fletcher*, 6 *Minn.* 550.

This disposes of all of the questions involved in the case.

The order denying a new trial is affirmed.